IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-01558-PAB

TAMMY JAN DEASON,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

## ORDER

---

    This matter is before the Court on plaintiff Tammy Jan Deason's complaint [Docket No. 1] filed on June 3, 2014. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. BACKGROUND

    On June 6, 2011, plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. R. at 104. Plaintiff initially alleged that she had been disabled beginning October 1, 2010, but later amended her alleged disability onset date to January 9, 2012. *Id.* After an initial administrative denial of her claim, plaintiff appeared at a hearing conducted by an Administrative Law Judge ("ALJ") on February 19, 2013. *Id.* On March 1, 2013, the

ALJ denied plaintiff's claim.  *Id.* at 122.  The ALJ found that plaintiff had the severe impairments of urinary frequency, degenerative joint disease of the lumbar spine, degenerative joint disease of the left hip, chronic pain, major depressive disorder, post-traumatic stress disorder, and anxiety/panic disorder.  R. at 107.  The ALJ found that these impairments, alone or in combination, did not meet or medically equal one of the regulations' listed impairments, *id.* at 109, and found that plaintiff had the residual functional capacity ("RFC") to

> stand/walk at least four hours in an 8-hour workday and sit at least six hours in an 8-hour workday, but needs to alternate between sitting and standing throughout the day while continuing to work. [Plaintiff] can lift ten pounds frequently and 20 pounds occasionally. [Plaintiff] must be permitted regular breaks every two hours secondary to urinary frequency.  [Plaintiff] can work in close proximity to others and accept routine supervision, but cannot be a member of a team or work with the public.  She is limited to simple, routine, and repetitive tasks that do not involve strict pace (such as an assembly line) or strict production quotas; instead she needs to be able to control the pace of her work so long as she meets productivity expectations.

*Id.* at 110.  Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform."  *Id.* at 121.

The Appeals Council denied plaintiff's request for review of the ALJ's denial.  R. at 1.  Consequently, the ALJ's decision is the final decision of the Commissioner. Plaintiff represents that, after the ALJ's denial of her claim, plaintiff filed a new application for benefits and was granted disability benefits beginning March 2, 2013. Docket No. 15 at 24, n.6.

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the

burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

Plaintiff argues that the ALJ erred in (1) finding that plaintiff's chronic obstructive pulmonary disease ("COPD") and vascular disease are not severe impairments; (2) concluding that plaintiff does not have an impairment or combination of impairments that meet or medically equal a listed impairment; (3) determining plaintiff's RFC; and (4) assessing plaintiff's credibility.  *See generally* Docket No. 15.  Plaintiff also argues that the Appeals Council erred in concluding that evidence submitted subsequent to the ALJ's decision did not compel a finding that plaintiff was disabled as of her alleged onset date.  *Id.* at 25; *see also* Docket No. 19 at 6-8.

### *1.  Step Two Determination of Severe Impairments*

Plaintiff argues that the ALJ erred at step two in finding that her COPD and vascular disease are not severe impairments.  The ALJ reasoned that plaintiff's COPD was not a severe impairment because, since plaintiff's amended offset date, she "has not sought treatment for an acute respiratory exacerbation, does not require the use of oxygen, and has not had recent pulmonary function tests."  R. at 108.  The ALJ further

cited that plaintiff continues to smoke and has not sought treatment for shortness of breath or other respiratory exacerbation since January 2012. *Id.* Regarding plaintiff's vascular disease, the ALJ reasoned that plaintiff has been pursuing treatment since October 2012, and that despite the claimed pain, plaintiff continued to walk to and from the mailbox and to go outside multiple times each day to smoke cigarettes. *Id.*

Plaintiff argues that she received treatment for asthma on multiple occasions after January 2012. Docket No. 15 at 15. Plaintiff also states that her vascular disease was not diagnosed until October 2012 and that her "lengthy period of treatment" for pain was likely attributable to her vascular disease. *See Id.* at 17-18.

The Court finds that the ALJ did not err in failing to list plaintiff's COPD and vascular disease as severe. First, although plaintiff points to evidence of treatment for COPD and vascular disease, plaintiff does not point to any evidence suggesting that those conditions severely limited her ability to work. At step two, plaintiff bears the burden of proof and must "demonstrate an impairment or combination of impairments that significantly limits the claimant's ability to do basic work activity." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). Second, even if plaintiff had satisfied her burden to show that her COPD and vascular disease are severe impairments, the ALJ's step two finding is not reversible error. "Under the regulations, once an ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency 'will consider the combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Barrett*

6

*v. Astrue*, 340 F. App'x 481, 484 (10th Cir. 2009) (unpublished) (quoting 20 C.F.R. § 404.1523). The ALJ "made an explicit finding that [plaintiff] suffered from [a] severe impairment[]. That was all the ALJ was required to do" at step two. *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007).

### 2. *Medical Listings*

Plaintiff argues that the ALJ considered only plaintiff's overactive bladder and degenerative joint disease impairments (and not plaintiff's "long history of debilitating [] albeit progressive limiting effects of [] COPD and associated diseases") in determining that plaintiff did not have an impairment or combination of impairments that meet or medically equal a medical listing. Docket No. 15 at 19. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Plaintiff has the burden at step three of demonstrating that her impairments meet all of the criteria in a particular listing. *Riddle v. Halter*, 10 F. App'x 665, 667 (10th Cir. 2001) (unpublished) (citation and quotation omitted).

The ALJ found that plaintiff's physical impairments do not meet or medically equal listings 1.02, 1.04, and 6.00 and that her claimed mental impairments do not meet or medically equal listings 12.04 and 12.06. R. at 109-10. Although plaintiff objects to certain of the ALJ's findings, she does not specify any listing for which she believes her impairments satisfy all medical criteria. *See* Docket No. 15 at 19. Nor does plaintiff object to the ALJ's conclusions that her impairments do not meet listing

6.00 et seq. and that her claimed mental impairments do not meet listings 12.04 and

12.06.  *See id.*[1]  Thus, the Court limits its analysis to whether substantial evidence

supports the ALJ's determination that plaintiff's physical impairments do not, alone or

in combination, meet medical listings 1.02 and 1.04.[2]

   Listing 1.02(A) describes "[m]ajor dysfunction of a joint(s) (due to any cause)"

and requires, in relevant part, "findings on appropriate medically acceptable imaging of

joint space narrowing" and "[i]nvolvement of one major peripheral weight-bearing joint

(i.e., hip, knee, or ankle) resulting in inability to ambulate effectively."  20 C.F.R. pt.

404, subpt. P, app. 1, § 1.02(A).[3]  The ALJ noted that x-rays on plaintiff's right hip were

normal and that her left hip showed evidence of an old fracture but no acute changes.

R. at 109; *see also id.* at 666.  The ALJ also noted that plaintiff had consistently walked

with a normal gait and had full range of motion as recently as November 17, 2012.  R.

at 109; *see also id.* at 696 (noting that plaintiff "presented with normal posture,

locomotion, and gait"); 656 ("gait and stance were normal"); 710 ("full ROM" in

---

[1]Plaintiff objects to the ALJ's findings concerning "Section 1.02 and 1.03 criteria."
Docket No. 15 at 19.  The ALJ did not make any findings concerning medical listing
1.03.  The Court construes plaintiff's argument as a challenge to the ALJ's findings
concerning medical listings 1.02 and 1.04.

[2]Plaintiff repeats the assertion that the ALJ erred in failing to consider her COPD
and vascular disease at step three.  Docket No. 15 at 19.  The government responds
that this argument is insufficiently developed.  Docket No. 18 at 14.  The Court agrees.
Plaintiff does not point to evidence that these conditions meet any medical criteria
specified in either listing 1.02 or 1.04.  Absent such a showing, plaintiff has not
demonstrated how these conditions are relevant to the ALJ's finding.

[3]The ALJ did not specify that her discussion concerned listing 1.04(A) rather than
1.04(B).  Nevertheless, the ALJ discussed factors relevant to that listing.  Listing
1.04(B) concerns joint disease of the upper extremities.  Plaintiff does not claim, and
the record does not support, any such impairment.

extremities).  Given the evidence of plaintiff's normal hip, gait, and range of motion, the Court finds that the ALJ's decision that plaintiff's impairments do not meet or medically equal listing 1.02 is supported by substantial evidence.[4]

Listing 1.04 describes "[d]isorders of the spine . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord."  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.  Listing 1.04(A) requires a positive straight-leg raising test.  *Id.* § 1.04(A).  Listing 1.04(C) requires lumbar spinal stenosis.[5]  *Id.* § 1.04(C).[6]  The ALJ noted that plaintiff has regularly had negative straight leg raising tests and that x-rays taken in October 2012 showed a normal spinal canal.  R. at 109.  Plaintiff does not point to any evidence to the contrary and the Court finds that the record provides substantial evidence for the ALJ's finding.  *See id.* at 723 (negative straight leg test); 587 (same); 692 ("spinal canal is normal.").

### 3. *RFC Determination*

Plaintiff argues that the ALJ erred in determining her RFC because the ALJ did not accord "at least great, if not controlling weight" to the opinion of plaintiff's treating physician, Dr. Satt.  Docket No. 15 at 20-23.  Dr. Satt opined in a May 2012

---

[4]The ALJ's finding concerns listing 1.02A, which describes involvement of a "weight-bearing joint," rather than listing 1.02B, which describes dysfunction of joints in the upper extremities.  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.  Plaintiff does not point to any evidence of joint disease in her upper extremities.

[5]Stenosis is "[a] stricture of any canal or orifice."  Stedman's Medical Dictionary stenosis (28th ed. 2005).

[6]As with listing 1.02, the ALJ did not specify to which specific listing her analysis was relevant.  Listing 1.04(B), however, requires a showing of spinal arachnoiditis.  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(B).  As plaintiff does not claim to suffer from spinal arachnoiditis, the Court confines its analysis to listings 1.04(A) and (C).

assessment that plaintiff was limited to standing and walking no more than an hour per day, could sit no longer than five hours in an eight-hour workday, and would likely be absent from work two to three times per month.  R. at 676, 680.  In August 2012, Dr. Satt repeated his opinion that plaintiff can sit for five hours in an eight-hour workday and would be absent from work two to three times per month, but revised his assessment of plaintiff's ability to walk, stating that she could stand and walk for one hour on a sustained basis.  *Id.* at 685.  Dr. Satt also opined that plaintiff would need to take unscheduled breaks every one to two hours for ten to fifteen minutes.  *Id.*

The opinion of a treating physician is generally entitled to greater weight than that of a non-treating physician because of the unique perspective derived from a treating relationship.  20 C.F.R. § 404.1527(c)(2).  Thus, an ALJ must accord controlling weight to the opinion of a treating physician where that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  *Id.*  Moreover, the opinion of a treating physician merits some measure of deference based on an application of the factors listed in 20 C.F.R. § 404.1527(c)(2), even if it is not entitled to controlling weight.  The ALJ need not discuss each factor, but the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Oldham*, 509 F.3d at 1258 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled."  *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

10

As "findings of a nontreating physician based upon limited contact and examination are of suspect reliability," *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987), when such findings conflict with the opinions of a treating physician, the ALJ must examine the nontreating physician's report "to see if it outweighs the treating physician's report, not the other way around."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 n.13 (10th Cir. 2004) (internal citations omitted).  "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant."  20 C.F.R. § 404.1527(e)(2)(ii).

Plaintiff argues that the ALJ "made no inquiry into whether Dr. Satt's opinions were well supported by medically acceptable clinical and diagnostic techniques." Docket No. 15 at 22.  The Court disagrees.  The ALJ noted that treatment records of Dr. Satt included x-rays of plaintiff's spine showing only mild findings and that, on examination, plaintiff demonstrated "full range of motion, normal strength and sensation, negative straight leg raises, and a normal gait."  R. at 115.  The ALJ further noted that plaintiff received adequate relief with regular osteopathic manipulation and injections into her hip.  *Id.*  Based on these "mild findings" and "conservative treatment," the ALJ concluded that Dr. Satt's assessment concerning plaintiff's ability to sit and stand was not consistent with other medical evidence in the record.

Regarding Dr. Satt's opinion that plaintiff would likely be absent from work two to three times each month due to her pain, the ALJ again noted that plaintiff has pursued "only the most conservative treatment for her pain" and that, before she transferred treatment to Dr. Satt, chiropractic manipulations and injections helped

relieve her pain.  *Id.* at 116; *see also id.* at 606 (noting plaintiff's statement that the injections "really worked"); 608, 613 (noting additional injections); 612 (noting that plaintiff had "good relief with injection for two weeks" and "has a job interview flagging on the highway").  The ALJ also noted that plaintiff's physical examination was normal during a November 2012 trip to the emergency room.  *Id.* at 117; 722-724.  Finally, the ALJ noted that Dr. Satt's assessments were inconsistent with his own observations of plaintiff.  *Id.* at 115, 117.  Namely, in a November 2012 treatment note, Dr. Satt stated that plaintiff "as usual, does not appear to be in acute distress."  *Id.* at 703.  In sum, the Court finds that substantial evidence supports the ALJ's decision to give Dr. Satt's opinions little weight.[7]  Because plaintiff does not argue that the ALJ erred in assigning weight to any other medical opinion,[8] the Court finds that the ALJ did not err in assessing plaintiff's RFC.

### 4. Credibility

Plaintiff argues that the ALJ erred in giving little weight to plaintiff's testimony concerning her limitations.  "Credibility determinations are peculiarly the province of the

---

[7]Plaintiff states that the ALJ wrongfully limited her review of Dr. Satt's treatment to the period beginning January 2012 even though Dr. Satt had treated plaintiff since 1992.  Docket No. 15 at 22.  Plaintiff points to no relevant evidence prior to January 2012 that undermines the ALJ's findings, however.  Moreover, while the ALJ must consider, among other factors, the length of the treatment relationship, *see* 20 C.F.R. § 404.1527(c)(2)(i), the ALJ is not required to discuss each factor listed in Section 404.1527(c).  *Oldham,* 509 F.3d at 1258.  Here, the ALJ stated that she "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527."  R. at 111.  The ALJ's representation, in conjunction with the specific, legitimate reasons cited for affording Dr. Satt's opinions little weight, satisfy the ALJ's burden with respect to determining plaintiff's RFC.

[8]Plaintiff also does not argue that the ALJ erred in assigning no weight to Dr. Satt's opinions concerning plaintiff's mental impairments.

finder of fact," and the Tenth Circuit will uphold such determinations so long as they are supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Credibility determinations should not be conclusory, but instead "closely and affirmatively linked" to evidence in the record. *Id.* In assessing a claimant's credibility, an ALJ must consider the following factors, in addition to the objective medical evidence:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). The ALJ must set forth "the specific evidence he relies on in evaluating the claimant's credibility," but is not required to undergo a "formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ noted that, while plaintiff testified that she had chronic neck spasms and had to lie down frequently during the day, she did not report neck pain to doctors between December 2011 and November 2012.  R. at 115.  The ALJ further cited an inconsistency in plaintiff's hearing testimony concerning her marijuana use, noting that plaintiff first testified that she tried marijuana as a pain reliever but no longer used it because it made her pain worse, and then changed her testimony to state that she had used marijuana on a regular basis for pain relief in the past and continued to use it for pain.  *Id.* at 115; *see also id.* at 157.  The ALJ also relied on Dr. Satt's treatment note dated November 29, 2012, in which Dr. Satt stated that plaintiff, "as usual, does not appear to be in acute distress" and "chastised" plaintiff for obtaining multiple medications from multiple sources.  *Id.* at 115; 703.  Finally, the ALJ concluded that plaintiff's testimony that she could only walk for half a block was inconsistent with both her testimony concerning daily activities (including spending much of the day pacing and going outside frequently for cigarettes) and with physical examinations that show full range of motion, normal strength and sensation, negative straight leg raises, and a normal gait.  *Id.* at 115.

Plaintiff does not argue that the ALJ's credibility determination is not supported by evidence in the record or that the ALJ did not specify the evidence she relied upon. Indeed, plaintiff concedes that there are "inconsistencies between [plaintiff's] complaints of pain and the medical record demonstrating only mild back and joint conditions" and that plaintiff, in obtaining prescriptions from multiple physicians, may have been "engaged in pain medication seeking behavior."  Docket No. 15 at 24. Rather than pointing to a specific error in the ALJ's credibility finding, plaintiff

speculates that, rather than her claimed impairments, the actual source of plaintiff's pain was "most likely the clogged artery." *Id.* Plaintiff further states that "later medical developments in 2013 show that her physical limitations were severe and largely attributable to the chronic COPD and deteriorating vascular system." *Id.* This speculation does not call into question whether the ALJ's credibility determination is affirmatively linked to evidence in the record. Accordingly, the Court finds that the ALJ did not err in assessing plaintiff's credibility.

### 5. *New Evidence*

Plaintiff argues, primarily in her reply, that the Appeals Council incorrectly ruled that certain evidence plaintiff submitted was not temporally relevant to the ALJ's March 1, 2013 decision. *See* Docket No. 19 at 6-8; *see also* Docket No. 15 at 25 (citing statement of Dr. Lee Schmucker dated February 24, 2014).

The submission of new evidence to the Appeals Council is governed by 20 C.F.R. §§ 404.970(b) and 416.1470(b). 20 C.F.R. § 404.970(b) states:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.[9]

If the Appeals Council determines that the newly submitted evidence is not new,

---

[9]The language of Section 416.1470(b) differs slightly from Section 404.970(b), but contains the identical requirement that newly-submitted evidence shall only be considered "where it relates to the period on or before the date of the administrative law judge hearing decision."

material, or temporally relevant and therefore declines to consider it, the Appeals Council's determination is reviewed de novo. *Chambers*, 389 F.3d at 1142. "Evidence is new within the meaning of [20 C.F.R. §§ 404.970(b) and 416.1470(b)] if it is not duplicative or cumulative." *Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. Apr. 23, 1996) (unpublished) (citing *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). "Evidence is material to the determination of disability if there is a reasonable possibility that [it] would have changed the outcome." *Lawson*, 1996 WL 195124, at *2 (citing *Wilkins*, 953 F.2d at 96). Evidence is "chronologically relevant" if it "relates to the period on or before the date of the [ALJ's] decision." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994); *see also Chambers*, 389 F.3d at 1143; *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) ("An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later-acquired disabilities or subsequent deterioration of a previously non-disabling condition."). New evidence showing that plaintiff's condition deteriorated "significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits." *Jones*, 122 F.3d at 1154.

The ALJ issued her decision on March 1, 2013. R. at 122. The new evidence that plaintiff submitted to the Appeals Council consists of medical records, the earliest of which is dated May 15, 2013, *see id.* at 39-40, and the latest of which is dated February 24, 2014. *Id.* at 8-9. The evidence shows that, beginning on May 15, 2013, plaintiff began treatment with Dr. Lee Schmucker, who noted in his first examination of plaintiff that plaintiff had "[s]ignificant [COPD] and "significant pain" that made it "hard

16

for her to function." R. at 39.  Dr. Schmucker prescribed methadone and Zyprexa and increased plaintiff's dosage of Lyrica. *Id.* On June 24, 2013, Dr. Schmucker noted that plaintiff "really struggles" and suffered from "cough, congestion, wheeze, [and] shortness of breath." *Id.* at 93.  Dr. Schmucker increased plaintiff's methadone and Zyprexa dosage and sent her for x-rays of her spine, pelvis, and hips. *Id.* On July 31, 2013 Dr. Schmucker noted in the "History" section of his progress record that plaintiff "generally really struggles significantly," though he did not note any specific worsening of plaintiff's symptoms. *Id.* at 34.

On October 7, 2013, plaintiff was hospitalized in the intensive care unit at Arkansas Valley Regional Medical Center due to respiratory failure attributed to her COPD.  R. at 15.  On October 30, 2013, Dr. Schmucker diagnosed plaintiff with "[r]ight heart failure" and "[i]nterstitial lung disease." *Id.* at 71.  Beginning in November 2013, plaintiff began oxygen therapy. *Id.* at 55-64.  From December 3-9, 2013, plaintiff was again hospitalized at Arkansas Valley Regional Medical Center due to pneumonia and an overdoes of narcotic medication and use of crystal methamphetamine. *Id.* at 42. Dr. Schmucker treated plaintiff on December 17, 2013 and January 6, 2014. *Id.* at 80, 77.  On February 24, 2014, Dr. Schmucker completed a "Medical Statement Regarding [COPD] for Social Security Disability Claim Where Smoking is Issue." *Id.* at 7-9.  Dr. Schmucker opined that plaintiff was limited to working four hours per day, standing no more than 15 minutes at one time, sitting no more than an hour at a time, and lifting no more than 10 pounds frequently. *Id.* at 8.

Plaintiff argues that Dr. Schmucker's February 24, 2014 statement concerning plaintiff's limitations provides additional support to Dr. Satt's opinion, Docket No. 15 at

25, and that the newly-acquired records "strengthen [plaintiff's] claim for disability and should have affected the decision as to wheter [sic] [plaintiff] was disabled during the applicable time period."  Docket No. 19 at 6.  The Court disagrees.  Plaintiff does not explain how Dr. Schmucker's opinion of her limitations in February 2014 lends any support to Dr. Satt's opinions dated May and August, 2012.  Notably absent from the new evidence that plaintiff submitted is any evidence from a medical source concerning plaintiff's condition on or before March 1, 2013.  *Cf. O'Dell*, 44 F.3d at 859 (rejecting new evidence submitted to the Appeals Council that "only describes the effect of claimant's combined conditions in December 1992, and contains no opinion as to the severity of these conditions two years earlier," during the period relevant to the ALJ's decision).  The ALJ noted that there was no evidence that plaintiff's condition had deteriorated between December 2011 and the date of the ALJ's decision, R. at 116, and that plaintiff's x-rays remained stable between May and December 2011.  *Id.*; *see also id.* at 667, 692.  Plaintiff does not point to any newly-submitted evidence suggesting that her condition deteriorated before the ALJ's March 1, 2013 order.  Although Dr. Schmucker's opinions may reflect that plaintiff's condition worsened beginning in May 2013, they do not support plaintiff's claim that she was disabled before March 1, 2013.  Thus, the Appeals Council did not err when it declined to consider the newly-submitted evidence.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff Tammy Jan Deason was not disabled is **AFFIRMED**.

18

DATED September 28, 2015.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge